UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK HOWARD,<br><br>        Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, *et al.*,<br><br>        Defendants. | Civil No. 09-CV-2416-IEG(WVG)<br><br>ORDER FOLLOWING *IN CAMERA* REVIEW |

Counsel for Defendants has lodged 488 pages of documents and 4 compact discs with the Court for *in camera* review. Many documents are relevant to the subject matter of this litigation. However, Defendants claim that various privileges and the right of privacy protect these documents from disclosure. Having reviewed the documents, the Court orders their production, non-production, and redaction as set forth in Appendix A to this Order.

/ / /

/ / /

/ / /

/ / /

/ / /

## I. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, parties may obtain discovery regarding any matter that is "not privileged" and "relevant to the subject matter involved in the pending action." Fed. R. Civ. P. 26(b)(1). The scope of discoverable information is broad, as "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

In civil rights cases brought under federal statutes, questions of privilege are resolved by federal law. Kerr v. U.S. Dist. Ct. for N.D. Cal., 511 F.2d 192, 197 (9th Cir. 1975). "State privilege doctrine, whether derived from statutes or court decisions, is not binding on federal courts in these kinds of cases." Kelly v. City of San Jose, 114 F.R.D. 653, 655-56 (N.D. Cal. 1987).

## II. DISCUSSION

**A.    Official Information Privilege[1]**

Defendants first invoke the qualified "official information privilege," which is one of federal common law. Soto v. City of Concord, 162 F.R.D. 603, 613 (N.D. Cal. 1995); Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1990). "To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages." Sanchez, 936 F.2d at 1033-34. The balancing test "is moderately pre-weighted in favor of disclosure." Kelly, 114 F.R.D. at 661. The privilege "must be formally asserted and delineated in

---

[1]    This privilege has also been known as the "government privilege," the "law enforcement privilege," and the "executive privilege." See Deocampo v. City of Vallejo, 2007 U.S. Dist. LEXIS 43744, *4 (E.D. Cal. 2007) (citing references for each variant).

order to be raised properly," and the party opposing disclosure must "state with specificity the rationale of the claimed privilege." <u>Kerr</u>, 511 F.2d at 198.

To properly invoke the governmental privilege, "[t]he claiming official must 'have seen and considered the contents of the documents and himself have formed the view that on grounds of public interest they ought not to be produced' and state with specificity the rationale of the claimed privilege." <u>Id.</u> The party invoking the privilege must at the outset make a "substantial threshold showing" by way of a declaration of affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit. <u>Soto</u>, 162 F.R.D. at 613. The affidavit must contain the following:

> (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality, (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if the disclosure were made.

<u>Id.</u> at 613; <u>Kelly</u>, 114 F.R.D. at 670.

"'[A] general claim of harm to the 'public interest' is insufficient to overcome the burden placed on the party seeking to shield material from disclosure.'" <u>Soto</u>, 162 F.R.D. at 614 (quoting <u>Kelly</u>, 114 F.R.D. at 672; <u>see also</u> <u>Miller v. Pancucci</u>, 141 F.R.D. 292, 300 (C.D. Cal. 1992)); <u>Chism v. County of San Bernardino</u>, 159 F.R.D. 531, 534-35 (C.D. Cal. 1994). "The party resisting discovery must <u>specifically</u> describe how disclosure of the requested documents

1  in that particular case . . . would be harmful." Soto, 162 F.R.D.
2  at 614 (citations omitted) (emphasis in original).

3  After considering the declaration submitted by San Diego
4  Sheriff Lieutenant W. Donahue, the Court concludes that Defendants
5  have not satisfied the second and fourth prongs listed above.
6  Moreover, Lt. Donahue's identification of the threatened governmen-
7  tal or privacy interest, as well as his projection of the resulting
8  harm, lack specificity and are couched in more sweeping, general
9  terms. As a result, Defendants may not withhold any documents on
10 basis of the official information privilege.

11 **B.    Required Reports Privilege**

12 Defendants invoke proposed Federal Rule of Evidence 502, the
13 California Penal Code, and three questionable cases in support of
14 their assertion of this privilege. However, none of these authori-
15 ties are controlling or binding on this Court, and Defendants have
16 cited no controlling authority that has applied this privilege in
17 the context of a civil rights action against a law enforcement
18 agency. Quite to the contrary, based on the very cases Defendants
19 cite, the Court concludes that the required reports privilege is
20 inapplicable here for several reasons.

21 First, Califano discusses this privilege as being another
22 name for the official information privilege, which Defendants
23 simultaneously invoke. See Ass'n for Women in Science v. Califano,
24 566 F.2d 339, 343-44 (D.C. Cir. 1977).

25 Next, Defendants' own cases vitiate their invocation of this
26 privilege. First, Califano suggests that this privilege does not
27 apply to the type of reports Defendants seek to shield from
28 disclosure: "This privilege covers a wide range of situations in

which the government seeks to protect from disclosure confidential reports which it has <u>received from citizens</u>." <u>Id.</u> at 343 (emphasis added). The internal affairs reports at issue here were not received from a citizen; the government agency itself created them. Defendant's next case, <u>In re Grand Jury Subpoena Dated Nov. 14, 1989</u>, 728 F. Supp. 368 (W.D. Pa. 1990), which has been cited by only two district courts since it issued over 21 years ago, also confirms that the "required reports privilege" does not apply to the type of reports Defendants seek to insulate here:

> The . . . "required reports privilege," stems from a state law which requires citizens to reveal personal information under a promise of confidentiality. In the United States, many statutes and regulations prohibit disclosure of certain records containing information which citizens are compelled legally to submit to federal, state or local governments. These statutes generally are tied to specific regulatory areas such as income tax returns, census reports, selective service records, public health records and accident reports, among others.

<u>Id.</u> at 371 (citations omitted). The above cases teach that the required reports privilege intends to protect confidential private information that <u>private citizens</u> are compelled to provide <u>to</u> the government. The purpose of this privilege could not possibly be more clear: "The purpose of the grant of such a privilege is to encourage persons to report voluntarily and accurately private information that is needed for effective governmental functioning." <u>Id.</u> (citation omitted). This purpose is clearly not fulfilled in the instant case, where the government agency itself created the report.[2] Ultimately, although some Defendants technically generated

---

[2] <u>In re Grand Jury Subpoena</u> is also inapplicable in the present context in light of the very narrow question the Court considered: "[T]he <u>precise question</u> before this Court is whether . . . we should adopt, as a matter of federal common law, the proposition that <u>public assistance records</u>, required to be filed by state law under assurances of confidentiality, are privileged against use <u>in federal grand jury proceedings</u>." <u>Id.</u> (emphasis added).

reports, every kind of report is clearly not the type that this privilege intends to protect.

Defendants also fail to establish that the reports they generated are even required. After all, reports must be required in order to invoke the <u>required</u> report privileged. They argue that under California law, "law enforcement agencies must investigate citizens' complaints and prepare reports regarding the investigation . . . ." (Doc. No. 29 at 10.) However, even the basic premise that the Penal Code requires investigative reports appears incorrect.

Although the practical effect of California Penal Code Section 832.5 may be that law enforcement agencies routinely generate reports after citizen complaint investigations, this section does not expressly require them to do so. Rather, it only mandates that such agencies "shall establish a <u>procedure</u> to investigate complaints" by the public and the only written document provision in the entire section requires that agencies make "a written description <u>of the procedure</u> available to the public." Cal. Pen. Code § 832.5(a)(1) (emphasis added).

Moreover, properly read, the section's requirement that "any" reports on citizen complaints be retained for five years does not impose the mandatory duty to actually <u>create</u> reports, but rather only requires that reports be <u>retained if</u> they are made. <u>See id.</u> § 832.5(b) ("Complaints and any reports or findings relating to these complaints shall be retained for a period of at least five years."). Even if the practical reality is that every law enforcement agency in California in fact generates investigative reports, that is their choice, not an express mandate of Section 832.5. All this section

requires is a <u>procedure</u> to investigate citizen complaints, which could plausibly consist only of a hearing before a panel that renders an <u>oral</u> decision.  Ultimately, insofar as Defendants rely on Section 832.5 to support the tenuous argument that the required reports privilege applies here, it fails to lend such support.

However, even if Section 832.5 requires investigative reports, Defendants ignore the underpinnings of the required reports privilege that the very cases they cite explain.  Simply because a "report" is "required" does not bring it under the auspices of the "required reports privilege."  One must look to the <u>kind</u> of report at issue and ask whether it is of the kind the privilege intends to protect.  Nothing in the cases Defendants cite supports the invocation of this privilege in the context of the instant case, and <u>In re Grand Jury Subpoena</u> in fact lends strong support to the opposite conclusion.

Ultimately, this privilege has never been adopted by the Ninth Circuit Court of Appeals and has been applied by only <u>one</u> court in the entire Circuit.  Accordingly, the Court will not adopt the required reports privilege, and Defendants may not withhold any documents on this basis.  <u>Accord</u> <u>Fisher v. Houser</u>, 2010 U.S. Dist. LEXIS 124519, *9-*10 (S.D. Cal. Nov. 23, 2010) (Skomal, M.J.).

**C.     Deliberative Process Privilege**

Defendants next invoke the deliberative process privilege, but again cite no controlling authority that has applied the deliberative process privilege to these types of documents in the context of a civil rights case.  Other courts in the Ninth Circuit have similarly rejected the use of this privilege in relation to internal affairs investigations and records of witness or police officer statements, as these communications are not designed to

contribute to the formulation of important public policy. <u>See, e.g.</u>, <u>Soto</u>, 162 F.R.D. at 612-13 ("The 'deliberative process' privilege . . . is also inappropriate for use in civil rights cases against police departments."); <u>Fisher</u>, 2010 U.S. Dist. LEXIS 124519 at *11-*12. Likewise, the Court rejects Defendants' invocation of the deliberative process privilege, and they may not withhold any documents on this basis.

**D.     Self-Critical Analysis Privilege**

Quite plainly, the "self critical analysis privilege" does not exist in the Ninth Circuit. <u>See</u> <u>Union Pac. R.R. v. Mower</u>, 219 F.3d 1069, 1076 n.7 (9th Cir. 2000); <u>Lewis v. Wells Fargo & Co.</u>, 266 F.R.D. 433, 439 (N.D. Cal. 2010). Defendants' use of <u>Dowling v. Am. Haw. Cruises</u>, 971 F.2d 423, 426 (9th Cir. 1992), to assert that the privilege applies here, without acknowledging the cases above, borders on a misstatement of law.[3/]

The Court in <u>Dowling</u> discussed the theoretical contours of this privilege while simultaneously expressing doubts about its existence in the Ninth Circuit. <u>Dowling</u>, 971 F.2d at 425, 426 ("This circuit has not yet considered whether there exists a so-called privilege of self-critical analysis," and "<u>Even if such a privilege exists</u>, the justifications for it do not support its application to voluntary routine safety reviews.") (emphasis added). The Court in <u>Dowling</u> assumed for the sake of argument that the

---

[3/] Defendants specifically state:
>  Documents are protected from disclosure when (1) the information results from a critical self-analysis undertaken by the party seeking the protection; (2) the public has a strong interest in preserving the free flow of the type of information sought; and (3) if discovery were allowed, the flow of such information would be curtailed. *Dowling v. American Haw. Cruises*, 971 F.2d 423, 426 (9th Cir. 1992). All three of Dowling's [sic] criteria apply to the documents herein provided.

(Doc. No. 29 at 11:19-24.)

privilege existed and ultimately held that the district court <u>abused its discretion</u> when it applied the self-critical analysis privilege. <u>Id.</u> at 427. <u>Dowling</u> in no way establishes the existence of this privilege in the Ninth Circuit and provides no support for Defendants' assertion of the privilege here. Indeed, the Ninth Circuit Court of Appeals cited <u>Dowling</u> <u>eleven years ago</u> for the contrary proposition, that the Ninth Circuit "has not recognized this novel privilege." <u>Union Pac. R.R.</u>, 219 F.3d at 1076 n.7. Nor has the Ninth Circuit recognized this privilege since.

Ultimately, Defendants assert the privilege in the face of (1) no law recognizing it in this Circuit and (2) a long line of District Court cases that expressly state that it does not exist in the Ninth Circuit. See, e.g., <u>Price v. County of San Diego</u>, 165 F.R.D. 614, 617-19 (S.D. Cal. 1996); <u>Fisher</u>, 2010 U.S. Dist. LEXIS 124519 at *10-*11; <u>Pittman v. County of San Diego</u>, 2010 U.S. Dist. LEXIS 97569, *4-*5 (S.D. Cal. Sept. 17, 2010) (Gallo, M.J.); <u>Jewell v. Polar Tankers Inc.</u>, 2010 U.S. Dist. LEXIS 45949, *2-*4 (N.D. Cal. Apr. 8, 2010) ("While some Circuits have recognized the existence of a self critical analysis privilege, the majority have declined to do so. The Ninth Circuit has never recognized it and the US Supreme Court has disavowed it. The state courts in California have similarly rejected its existence."); <u>Taylor v. L.A. Police Dep't</u>, 1999 U.S. Dist. LEXIS 23570, *16 (C.D. Cal. Nov. 10, 1999). The Court declines to apply this non-existent privilege.

**E.    Privacy and Confidentiality Under California Law**

Defendants assert that law enforcement personnel files are private under California state privacy statutes and should not be disclosed as a result. However, Plaintiff brought this case under a federal statute, 42 U.S.C. § 1983, and it is well settled that

1  "questions of evidentiary privilege arising in the course of the
2  adjudication of federal rights are governed by the principles of
3  federal common law." Green v. Baca, 226 F.R.D. 624, 643 (C.D. Cal.
4  2005); Miller v. Pancucci, 141 F.R.D. 292, 297 (C.D. Cal. 1992)
5  (citing United States v. Zolin, 491 U.S. 554 (1989)). Accordingly,
6  this Court will not apply California statutory privileges to
7  Plaintiff's federal claims and Defendants may not withhold any
8  documents on state statutory privilege law grounds. Accord Fisher,
9  2010 U.S. Dist. LEXIS 124519 at *9-*10.
10     However, insofar as the privacy right is constitutionally-
11 based, the Court applies the analysis set forth in Soto. See Soto,
12 162 F.R.D. at 616-17.

### III. CONCLUSION

14     Production of documents shall proceed as instructed in
15 Appendix A to this Order and shall be completed **on or before June
16 17, 2011**. All documents produced shall be subject to the operative
17 protective order (Doc. No. 22) in this matter, and sanctions will
18 issue for violation thereof.
19 IT IS SO ORDERED.
20 DATED: June 3, 2011

                                    Hon. William V. Gallo
                                    U.S. Magistrate Judge

**Appendix A**

| Doc. # | Produce | Do Not Produce | Comments |
|---|---|---|---|
| p0001-p0023 | x | | Hampton v. City of San Diego, 147 F.R.D. 227, 229 (S.D. Cal. 1993); Soto v. City of Concord, 162 F.R.D. 603, 620-21 (N.D. Cal. 1995); see also Carter v. City of Carlsbad, 2011 U.S. Dist. LEXIS 14921, *5-*17 (S.D. Cal. Feb. 15, 2011) (discussing evaluative portions of internal affairs reports); Fisher v. Houser, 2010 U.S. Dist. LEXIS 124519, *17-*19 (S.D. Cal. Nov. 23, 2010) (discussing complaints in similar incidents).<br><br>p0003: Redact Ms. Gonzalez's date of birth.<br><br>p0003, p0004, p0012: Redact Ms. Gonzalez's street address.<br><br>p0003 & p0012: Redact telephone numbers.<br><br>p0021: Redact license plate number on fifth line from the bottom of the page. |
| p0024 | x | | Same authority as above.<br><br>Redact license plate number and vehicle information that begins at the 2:00-minute mark and ends at the 2:22-minute mark.<br><br>Redact telephone number information that begins at the 3:24-minute mark and ends at the 3:30-minute mark. |
| p0025 | x | | Same authority as above. |
| p0026 | x | | |
| p0027 | x | | |

| Doc. # | Produce | Do Not Produce | Comments |
|---|---|---|---|
| p0028-p0068 | x | | <u>Soto v. City of Concord</u>, 162 F.R.D. 603, 620-21 (N.D. Cal. 1995) (discussing citizens' complaints); see also <u>Carter v. City of Carlsbad</u>, 2011 U.S. Dist. LEXIS 14921, *5-*17 (S.D. Cal. Feb. 15, 2011) (discussing internal affairs reports). |
| p0069 | | x | Irrelevant; Fed. R. Evid. 402. |
| p0070-p0090 | x | | |
| p0091-p0095 | | x | Attorney-client privilege. |
| p0096-p0112 | x | | |
| p0113 | N/A | | Has been produced. |
| p0114 | x | | Compact disc. |
| p0115-p0238 | | x | Intra-agency personnel matter; third-party highly private information, including inmate custody data sheets: Irrelevant; Fed. Evid. 402; Cal. Const. art. I, § 1. |
| p0239-p0240 | x | | Redact Sgt. Palmer's date of birth.<br><br>Redact the zip code that appears in the middle of the page.<br><br>Redact the telephone number that appears in the middle of the page.<br><br>p0239: Redact entire bottom 2 purged investigations.<br><br>p0240: Redact entire top 9 purged investigations; redact the third investigation from the bottom. |
| p0241-p0263 | | x | Irrelevant; Fed. R. Evid. 402. Fed R. Evid. 402; Cal. Const. art. I, § 1. |

| Doc. # | Produce | Do Not Produce | Comments |
|---|---|---|---|
| p0264-p0320 | x | | <u>See</u> <u>Green v. Baca</u>, 226 F.R.D. 624, 644 (C.D. Cal. 2005).<br><br>p0264, p0268, p0279, p0289, p0301, and p0310: Redact Sgt. Palmer's employee identification number. |
| p0321-p0488 | x | | p0333-p0488: Redact names, initials, and Arjis numbers for all individuals other than Sgt. Palmer. Do not redact Sgt. Palmer's Arjis number.<br><br>p0321: Redact identification number at top of page.<br><br>p0327: Redact information on all CPR cards other than Sgt. Palmer's card. |