1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK HOWARD,<br><br>                    Plaintiff,<br><br>vs.<br><br>COUNTY OF SAN DIEGO, ELIZABETH PALMER and DOES 1-20, inclusive,<br><br>                    Defendants. | **LEAD CASE NO: 09-CV-2416-IEG (WVG)**<br><br>MEMBER CASE NO: 10-CV-2290-IEG (WVG)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 34] |
| PATRICK HOWARD,<br><br>                    Plaintiff,<br><br>vs.<br><br>GREG BARNETT and DOES 1-20,<br><br>                    Defendants. | |

Presently before the Court is Defendants' motion for summary judgment.  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

## FACTUAL BACKGROUND

This case arises out of an incident at the South Bay (Chula Vista) Courthouse of the San Diego County Superior Court.  On November 12, 2008, Deputy Sheriff Mark Profeta arrested and issued a

citation to Plaintiff Patrick Howard for interfering with the business of a public agency in violation of California Penal Code § 602.1(b).  According to Defendants, Howard was cited on November 12 for his actions at the courthouse two days earlier.  According to Howard, he was cited and arrested in retaliation for filing a complaint with the internal affairs department of the San Diego County Sheriff's Office following his interaction with Defendant Elizabeth Palmer on November 10, 2008.

Defendant Elizabeth Palmer has worked as a San Diego County Deputy Sheriff for twenty-five years, and has been a Sergeant for eighteen years.  At the time of the incident giving rise to this action, Defendant Greg Barnett was also a Sheriff's Deputy—a Lieutenant and Sergeant Palmer's supervisor, but he has since retired.

Plaintiff Patrick Howard has worked in San Diego as an independent attorney service and process server for approximately twenty years.  His duties include making daily trips to Superior Courts throughout San Diego County to file and retrieve documents from the civil and sheriff's offices for the firm.  Before the incidents giving rise to this case, Howard made daily trips to the El Cajon and South Bay (Chula Vista) courthouses.

*November 10, 2008: The Interaction Between Howard and Sgt. Palmer*

On November 10, 2008, there were two magnetometers (metal detectors) at the front entrance of the South Bay courthouse.  On the right stood a metal detector for members of the general public seeking to enter the courthouse.  Directly beside the public metal detector stood a metal detector designated exclusively for courthouse employees and law enforcement personnel.  Signage posted on the employee metal detector identified it as for employees and law enforcement only.  Although designated for use by different groups, the two metal detectors were functionally identical.

At approximately 12:10 p.m., Howard arrived at the courthouse carrying a folder containing his car keys and various documents to be filed with the court.[1]  He placed his folder on the conveyer belt and waited behind two people to enter the public metal detector.  One of the people in front of him was stopped as she passed through the metal detector, causing a delay.  Seeing this, Howard moved to the

---

[1] With their motion, Defendants lodged video recordings of the November 10, 2008, incident taken from three security cameras at the entrance to the South Bay courthouse.  [Defs.' MSJ, Ex. A.] The recordings are relied upon throughout the discussion of the facts.

employee metal detector and walked through it.  Howard had done this on multiple previous occasions, in full view of the deputies on duty and without incident.  [Howard Decl. ¶ 6.]

Sgt. Palmer was stationed at the entrance to the courthouse that day.  She and Howard had never before interacted with one another and did not recognize each other.  As Howard passed through the metal detector without activating any alarm, Sgt. Palmer extended her hand to stop him from walking past her and instructed him to go back through the employee metal detector and return through the public metal detector.  Howard complied and was back in line for the public metal detector within a few seconds.[2]

As Howard walked through the public metal detector, Sgt. Palmer asked him to stop and speak with her.  Howard walked past Sgt. Palmer and retrieved his belongings from the conveyer belt, and then walked past her again before stopping near a chair a few steps away.  The two spoke briefly. Howard then proceeded to the sheriff's office to conduct his business.

At some point during their interaction, Sgt. Palmer asked Howard whether he "worked [at the courthouse]," and Howard replied that he did.  Howard claims he initially misunderstood the question: Howard answered in the affirmative because his business brought him to the courthouse every day, but it eventually became clear that Sgt. Palmer actually wanted to know whether he was a courthouse employee.  [Howard Dep., at 162:21-166:21.]  According to Sgt. Palmer, this exchange occurred while Howard walked through the employee metal detector and before he returned through that detector and re-entered the courthouse through the public metal detector.  [Palmer Dep., at 107:15-25.]  According to Howard, however, this exchange occurred during his brief conversation with Sgt. Palmer immediately after he passed through the public metal detector.  [*See* Howard Dep., at 162:21-166:21; *see also id.* at 144:5-10 (Howard does not recall Sgt. Palmer saying anything to him as he passed through the employee metal detector).]

In any event, after Howard entered the sheriff's office, Sgt. Palmer instructed another deputy to

---

[2] As he passed through the employee detector, Howard's chest came into slight physical contact with Sgt. Palmer's fingers.  The parties dispute whether Howard walked into Sgt. Palmer's extended hand or whether she poked him.  The parties also dispute the number of times Sgt. Palmer verbally instructed Howard to stop and to return through the public metal detector before he complied.  The video recordings do not clearly resolve either dispute.

cover her position, and then she entered the sheriff's office.  She asked Howard to hand her his driver license, and he complied.  Sgt. Palmer took his license into a back office, where Howard observed her speaking on the telephone.  [Howard Decl., ¶ 11.]

After concluding her conversation on the telephone, Sgt. Palmer returned to the main area of the sheriff's office and began photocopying Howard's license.  Howard asked why she was doing so and informed Sgt. Palmer that he had been working at the South Bay courthouse for twenty years.  According to Howard, Sgt. Palmer angrily responded that she "was going to see [that Howard would not] work here for a twenty-first year," and that he would be "kicked out of every court in San Diego." [*Id.*, ¶ 13.]  Sgt. Palmer asked for whom Howard worked, and Howard replied that he is self-employed.  According to Howard, Sgt. Palmer responded, "I should have taken you to the ground."  [*Id.*, ¶ 14.]  Howard asked to speak with Sgt. Palmer's supervisor, but she told Howard that her supervisor was not at the courthouse and that Howard "wouldn't want to meet him anyway."  [*Id.*]

At this point, Howard stated that he was leaving, and walked out of the sheriff's office and back through the courthouse entryway, toward the courthouse exit.  [*Id.*, ¶ 15.]  Sgt. Palmer followed him; ordered him to leave the courthouse—which, Howard claims, he was already doing; asked another deputy to escort Howard out of the building; and told Howard that he would not be allowed to enter the courthouse in the future.  [*See id.*, ¶¶ 15-16; Howard Dep., 181:2-182:1; Barnett Dep., at 20:12-19 (stating that Sgt. Palmer told Lt. Barnett that she had instructed Howard not to return to the courthouse unless under subpoena).  *But see* Palmer Dep., at 134:18-24 (stating that Howard initially refused her instruction to leave).]  Howard left the courthouse without further incident; he was neither arrested nor cited for any offense at that time.

### *November 12, 2008: Howard's Internal Affairs Complaint and His Arrest*

On the morning of November 12, 2008, before making his usual courthouse runs, Howard filed a complaint against Sgt. Palmer with the internal affairs division of the sheriff's department.  Howard explained to the person processing his complaint that his employment required him to visit the South Bay courthouse daily, and he expressed a concern that the conflict with Sgt. Palmer might continue upon his return.  [Howard Decl., ¶ 19.]  The internal affairs employee told Howard she would contact the South Bay courthouse to inquire of Howard's status there and would telephone Howard's cell

phone after she did.  She further advised him to go to the El Cajon courthouse first so that she would have time to reach someone at the South Bay courthouse.

Howard followed that advice and did not arrive at the South Bay courthouse until approximately 2:00 p.m.  Although Howard had not received a telephone call from anyone in internal affairs, Sgt. Palmer and Lt. Barnett had been informed that Howard filed a complaint.  [Palmer Dep., at 150:17-25, 159:14-160:15, 171:16-20; Barnett Dep., at 18:21-22:19.]

Howard entered the South Bay courthouse through the public metal detector without incident. He did not see Sgt. Palmer, and none of the deputies spoke to him or otherwise indicated he was not permitted to enter.  While waiting in the business office to file documents, a sheriff's deputy asked if he was Patrick Howard, and then stated that a Sgt. Barrett wanted see him in the sheriff's office after he finished filing documents.  Approximately thirty minutes later, Howard finished his filing and went downstairs as requested.  [Howard Decl., ¶ 22.]

Howard entered the sheriff's office and informed the clerk that he was there to see Sgt. Barrett. Sgt. Palmer was present, but she did not acknowledge Howard as he entered the office.  Two other deputies were nearby, including Deputy Mark Profeta, whom Howard recognized from previous visits to the courthouse.  Deputy Profeta advised Howard that he was under arrest for entering the courthouse after being ordered not to return, handcuffed him, and took him into a back office.  [Howard Decl., ¶ 24; Profeta Dep., at 59:11-22.]  After searching Howard, Deputy Profeta went into a neighboring room to consult with Sgt. Palmer.  Howard claims to have overheard part of their conversation: reviewing a code book, they were trying to decide what charge to file against Howard.  [Howard Decl., ¶ 24.]  Approximately ten minutes later, Sgt. Barrett entered and told Howard that he was never permitted to return to the South Bay courthouse.[3]

Deputy Profeta issued Howard a citation listing a violation of California Penal Code § 602.1(b), interference with a business establishment.  The citation lists the date of Howard's violation as

---

[3] Howard also claims that, during his conversation with Sgt. Barrett, it became clear that Sgt. Barrett was under the impression that Howard had attempted to completely bypass the security screening process by "go[ing] under the ropes."  [Howard Dep., 210:1-25; Howard Decl., ¶ 25.]  From that, Howard surmises that Sgt. Palmer must have misinformed her colleagues about the incident on November 10.  [Howard Decl., ¶ 25.]

November 12, 2008, and provided a court date of January 28, 2009.  After Howard signed the citation, he was released and instructed to leave the building, which he did.  [Howard Decl., ¶ 26.]

*Inconsistent Justifications for Howard's Arrest*

According to Defendants, Howard was arrested and cited on November 12 for his actions on November 10.  On November 12, before Howard arrived at the courthouse, Sgt. Palmer informed Lt. Barnett of her November 10 interaction with Howard, and Peggi Lorenz, a secretary in internal affairs, telephoned Lt. Barnett to inform him of Howard's complaint.  [*See* Barnett Dep., at 18:1-7, 20:14-22:13; Palmer Dep., at 159:1-160:3.]  Later that day, Lt. Barnett learned that Howard had entered the building, and, based on Sgt. Palmer's description of the November 10 incident, he instructed her to arrest Howard for "the crime" committed on November 10.  [*See* Palmer Dep., at 159:1-160:3; Barnett Dep., at 65:1-7 (stating he instructed Sgt. Palmer to arrest Howard for his actions on November 10, and that Howard committed no crime at the courthouse on November 12).]  Sgt. Palmer expressed concern to Lt. Barnett that arresting Howard on November 12 might appear retaliatory, because Howard had filed a complaint with internal affairs.  Lt. Barnett insisted, and Sgt. Palmer thus instructed Deputy Profeta to arrest Howard.[4]

That account, however, is not consistent with the arrest report authored by Deputy Profeta.  In that report, Deputy Profeta stated that on November 10 Sgt. Palmer had ordered Howard not to return to the courthouse, and that on November 12 she instructed Deputy Profeta to "place Howard under arrest for returning to the courthouse after being ordered not to return."  [Profeta Dep., 50:5-51:24 &. Ex. 1 (Profeta's arrest report), at 8-9; *see also id.*, Ex. 1, at 9-11 (Sgt. Palmer's statement of the November 10 incident, which states that she told Howard he would be arrested if he returned to the courthouse).]  Additionally, when Deputy Profeta arrested Howard, he, with Sgt. Palmer present, advised Howard he was under arrest for entering the courthouse on November 12 after being ordered on November 10 not to do so.  [*See id.* at 59:11-22.]  Moreover, the citation issued to Howard upon his

---

[4] Howard first learned of Sgt. Palmer's claim that she acted under Lt. Barnett's orders during Sgt. Palmer's deposition.  [*See* Pl.'s Opp'n, at 21; Palmer Dep., 159:1-160:25.]

arrest, is signed by Sgt. Palmer—not Lt. Barnett—as the "Arresting Deputy" and lists November 12 as the date of the alleged violation.  [*See* Defs.' MSJ, Ex. B (Howard's citation); Howard Decl., ¶ 26.]

*Criminal Proceedings Related to Howard's Arrest*

After various procedural delays (stemming mainly from prosecutors not filing charges against Howard right away and then not having received a police report on Howard's arrest), the judge dismissed the case and issued an order permitting Howard to enter any courthouse in San Diego County to conduct any legitimate business.  [Pl.'s Opp'n, Ex. 4 (minute order); Howard Decl., ¶ 30.]

## PROCEDURAL HISTORY

On October 28, 2009, Howard filed a complaint against the County of San Diego and Sgt. Palmer.  [Compl., 09-cv-2416-IEG (WVG).]  Claims one through three arise under 42 U.S.C. § 1983— (1) unlawful seizure, against Sgt. Palmer; (2) retaliation in violation of the First and Fourteenth amendments, against Sgt. Palmer; and (3) a *Monell* claim, against the County.  Claims four through six arise under California law—(4) negligence, against Sgt. Palmer and the County; (5) False Arrest, against Sgt. Palmer and the County; and (6) violations of California Civil Code § 52.1, against Sgt. Palmer and the County.  On November 5, 2010, shortly after Sgt. Palmer's deposition, Howard filed a related complaint, alleging two claims against Lt. Barnett under § 1983: (1) unlawful seizure, and (2) retaliation in violation of the First and Fourteenth Amendments.  [Compl., 10-cv-2290-IEG (WVG).]  On January 3, 2011, the Court consolidated Howard's cases.  [Doc. No. 20.]  Defendants now move for summary judgment on all claims, as to all Defendants.

## LEGAL STANDARD

"Summary judgment is appropriate where there is no genuine issue of material fact to be determined at trial."  *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987-88 (9th Cir. 2006) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In determining whether there is a genuine issue of fact, the Court does not make credibility determinations or weigh conflicting evidence regarding disputed issues of fact.  *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010) (quoting *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  Rather, the Court must review the record as a whole and draw all reasonable inferences in favor of the nonmoving party.  *Hernandez*, 343 F.3d at 1112 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-50 (2000)).

## DISCUSSION

**I.      Claims Under 42 U.S.C. § 1983**

**A.      Claim 1: Unlawful Seizure, Against Sgt. Palmer and Lt. Barnett**

Defendants argue for summary judgment on Howard's unlawful seizure claim on the grounds that (a) Howard suffered no constitutional violation because probable cause existed to support an arrest, and (b) even if a constitutional violation did occur, Sgt. Palmer and Lt. Barnett are entitled to qualified immunity.  Howard counters that disputed issues of fact preclude summary judgment on the issues of probable cause and qualified immunity because, under Howard's version of the facts, no reasonable officer in Defendants' position would have believed Howard's arrest to be lawful.

In evaluating a police officer's assertion of qualified immunity, the Court makes two determinations.  The Court decides, first, whether, "taking the facts in the light most favorable to the non-moving party, the officer's conduct violated a constitutional right; and second, if a violation occurred, whether the right was clearly established in light of the specific context of the case."  *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010) (internal quotation marks omitted).  The Court has discretion to address either prong of the qualified immunity analysis first.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

**i.      Whether Howard Suffered a Constitutional Deprivation**

"It is well established that 'an arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983.'"  *Rosenbaum v. Washoe Cnty.*, __F.3d__, 2011 WL 3659353, at *3 (9th Cir. Aug. 22, 2011) (quoting *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988)).  "Probable cause exists when, under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe the suspect had committed a crime."  *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 966 (9th Cir. 2001); *see United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).  "The analysis

involves both facts and law.  The facts are those that were known to the officer at the time of the arrest.  The law is the criminal statute to which those facts apply."  *Rosenbaum*, 2011 WL 3659353, at *4.

"[P]robable cause supports an arrest so long as the arresting officers had probable cause to arrest the suspect for any criminal offense, regardless of their stated reason for the arrest . . . ."  *Torres v. City of Los Angeles*, 548 F.3d 1197, 1207 (9th Cir. 2008) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004).  However, "an arrest is still unlawful unless probable cause existed under a specific criminal statute."  *Id.* (citing *Devenpeck*, 543 U.S. at 156); *see Edgerly v. City & Cnty. of San Francisco*, 599 F.3d 946, 954 (9th Cir. 2010) ("It is therefore not enough that probable cause existed to arrest [the plaintiff] for some metaphysical criminal offense; the Officers must ultimately point to a particular statutory offense.").  "Generally, officers need not have probable cause for every element of the offense, but they must have probable cause for specific intent when it is a required element."  *Edgerly*, 599 F.3d at 953 (citing *Lopez*, 482 F.3d at 1072).

Howard was arrested and cited for violating California Penal Code § 602.1(b), which provides that

> [a]ny person who intentionally interferes with any lawful business carried on by the employees of a public agency open to the public, by obstructing or intimidating those attempting to carry on business, or those persons there to transact business with the public agency, and who refuses to leave the premises of the public agency after being requested to leave by the office manager or a supervisor of the public agency, or by a peace officer acting at the request of the office manager or a supervisor of the public agency, is guilty of a misdemeanor, punishable by imprisonment in a county jail for up to 90 days, or by a fine of up to four hundred dollars ($400), or by both that imprisonment and fine.

A violation of § 602.1 thus has two elements: "(1) intentional interference, and (2) refusal to leave."  *Dubner*, 266 F.3d at 966; *Shin v. City of Union City*, No. C 02-02648 CRB, 2004 WL 2091992, at *2 (N.D. Cal. Sept. 17, 2004).[5]  Interpreting the facts in the light most favorable to Howard, neither element is satisfied.

Taking the second element first, Howard states that he never refused to leave.  Rather,

---

[5] While *Dubner* and *Shin* discussed Penal Code § 602.1 generally, it is worth noting that § 602.1(a) was actually at issue in those cases, while § 602.1(b) is at issue here.  The operative language of the two subsections is identical; the only difference between them is that subsection (a) deals with private businesses and subsection (b) deals with public agencies.

1  according to Howard, he attempted to leave the courthouse after concluding his business there but was

2  delayed by Sgt. Palmer, and he was already attempting to leave when Sgt. Palmer "ordered" him to do

3  so.  [*See* Howard Decl., ¶¶ 13-15.]  The only contrary evidence presented by Defendants is Sgt.

4  Palmer's deposition testimony that Howard initially refused to comply with her instruction to leave.

5  [Palmer Dep., at 134:18-24.]  The Court cannot determine the relative credibility of these conflicting

6  accounts on a summary judgment motion.  *Sluimer*, 606 F.3d at 587.

7       Regarding the first element, according to Howard: he sought only to file documents with the

8  court as quickly as possible; he attempted to pass through the employee metal detector to avoid delay;

9  and other Sheriff's Deputies had previously permitted him to do so.  Howard's intentions remained the

10  same throughout his interaction with Sgt. Palmer.  While Defendants argue that Howard knowingly

11  violated security procedures, they have neither argued nor presented evidence suggesting that Sgt.

12  Palmer had probable cause to believe Howard *intended* to disrupt any business at the South Bay

13  courthouse.  *See Dubner*, 266 F.3d at 967 (finding "insufficient evidence to warrant a prudent person

14  to believe she had violated section 602.1" where there was no evidence of her intent to interfere); *see*

15  *also Lopez*, 482 F.3d at 1072 ("[W]hen specific intent is a required element of the offense, the arresting

16  officer must have probable cause for that element in order to reasonably believe that a crime has

17  occurred.").

18       Under the facts as presented by Howard, he did not refuse to leave the courthouse and he did

19  not intend to interfere with business at the courthouse.  Thus, there was no probable cause to arrest

20  Howard under California Penal Code § 602.1.

21       In their reply, Defendants list—without discussing the applicable requirements for establishing

22  probable cause—several other sections of the penal code for which they claim there was probable

23  cause to arrest Howard.  Interpreting the facts in the light most favorable to Howard, there was no

24  probable cause to arrest Howard under any of the provisions listed by Defendants.  Accordingly, the

25  Court **DENIES** summary judgment that probable cause supported Howard's arrest.

26       **ii.     Whether Defendants Are Entitled to Qualified Immunity**

27       "The purpose of qualified immunity is to ensure that officers are given fair notice of the law

28  that they are required to uphold."  *Rosenbaum*, 2011 WL 3659353, at *7 (citing *Anderson v.*

1   *Creighton*, 483 U.S. 635, 640 (1987)).  In the context of an unlawful arrest, an officer is entitled to

2   qualified immunity where "it is *reasonably arguable* that there was probable cause for arrest—that is,

3   [where] reasonable officers could disagree as to the legality of the arrest."  *Rosenbaum*, 2011 WL

4   3659353, at *3.  "The linchpin of the qualified immunity analysis is the reasonableness of the officer's

5   conduct in the particular case at hand."  *Id.* at *6 (citing *Anderson*, 483 U.S. at 640).  "The law

6   acknowledges that an otherwise competent officer will sometimes make an unreasonable decision or

7   make an unreasonable mistake as to law or fact.  In those instances, the officer will appropriately be

8   liable under § 1983."  *Id.* (citing *Liberal v. Estrada*, 632 F.3d 1064, 1078 (9th Cir. 2011)).

9       Defendants simply point to their version of the facts of this case and argue that arresting

10   Howard "cannot be said to have been clearly unlawful."  [Defs.' MSJ, at 5.]  But the constitutional

11   requirement of probable cause for a warrantless arrest is certainly well established.  *See, e.g.*, *Harper v.*

12   *City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008) ("An arrest without probable cause violates

13   the Fourth Amendment and gives rise to a claim for damages under § 1983.") (citing *McKenzie v.*

14   *Lamb*, 738 F.2d 1005, 1007 (9th Cir. 1984)).  As discussed above, viewing the facts in Howard's favor,

15   as the Court must at summary judgment, there was no probable cause to arrest him.  The requirement

16   of probable cause for an arrest is well established; thus, neither Sgt. Palmer nor Lt. Barnett is entitled

17   to qualified immunity.  Accordingly, Defendants' motion for summary judgment on the grounds of

18   qualified immunity is **DENIED**.

19       **C.      Claim 2:  First Amendment Retaliation, Against Sgt. Palmer and Lt. Barnett**

20       Defendants also argue they are entitled to summary judgment on Howard's First Amendment

21   retaliation claim because (a) Howard's internal affairs complaint was not protected speech, and

22   (b) retaliation was not the "but-for" cause of Howard's arrest.  In order to demonstrate his First

23   Amendment rights were violated, Howard

24           must ultimately prove first that [Defendants] took action that would chill or silence a
            person of ordinary firmness from future First Amendment activities . . . .  The second
25           requirement is [that] . . . [Plaintiff] must ultimately prove that [Defendants'] desire to
            cause the chilling effect was a but-for cause of [Defendants'] action.
26

27   *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 901 (9th Cir. 2008) (alterations and omissions in

28   original) (quoting *Skoog v. County of Clackamas*, 469 F.3d 1221, 1231-32 (9th Cir. 2006)).  Where

there is sufficient evidence of retaliatory motive, the existence of probable cause to arrest will not preclude a retaliation claim.  *See  Skoog*, 469 F.3d at 1235 (holding that plaintiff need not prove the absence of probable cause in order to assert a claim for retaliation).  *But see also Dietrich*, 548 F.3d at 901 (holding district court properly granted summary judgment on very tenuous retaliation claim in light of the very strong evidence there was probable cause to arrest).

As an initial matter, Defendants incorrectly assert that Howard's internal affairs complaint does not constitute protected speech.  When a public employee sues a government employer under the First Amendment's Speech Clause, the employee must show that the speech was "on a matter of public concern."  *Borough of Duryea v. Guarnieri*, __ U.S. __, 131 S. Ct. 2488, 2493 (2011).  But Howard is not a public employee, and Defendants are not his employer.  Howard is a private citizen who filed an internal affairs complaint regarding the manner in which Sgt. Palmer performed her duties.[6]  The "public concern" rule simply does not apply to this action by a private citizen against a state actor.

Viewing the facts in Howard's favor, a jury could reasonably find that Howard was arrested in retaliation for filing an internal affairs complaint.  Both Sgt. Palmer and Lt. Barnett admit they were notified of Howard's complaint before he entered the South Bay courthouse on November 12, 2008.  [Palmer Dep., 150:17-25, 159:14-160:15, 171:16-20; Barnett Dep., 18:21-22:19.]  As he arrested Howard, Deputy Profeta, with Sgt. Palmer present, told Howard he was being arrested for entering the courthouse on November 12 after being told on November 10 that he was not permitted to enter again.  [*See* Profeta Dep., at 59:11-22.]  But Defendants now concede Howard did nothing on November 12 to justify his arrest; they now claim Howard was arrested for disrupting the business operations of the court on November 10, 2008.  [Palmer Dep., 164:8-10; Barnett Dep., 65:3-7.]  The inconsistent justifications for Howard's arrest, coupled with the fact that Sgt. Palmer and Lt. Barnett became aware of Howard's internal affairs complaint shortly before causing his arrest, support a reasonable inference of retaliation.

---

[6] As Howard notes, even if this were a case requiring application of the "public concern" rule, the manner in which police perform their duties is a matter of public concern.  *Gillette v. Delmore*, 886 F.2d 1194, 1197 (9th Cir. 1989).

1    In their Reply, Defendants argue they should be afforded qualified immunity on Howard's

2    retaliation claim because there is no clear rule "prohibiting issuance of citations after the offense date"

3    or enjoining officers "from issuing citations to individuals who have filed citizen complaints," or

4    prohibiting an employee's superior officer from "countermand[ing] his subordinate's election not to

5    cite a person for a known offense."  [Defs.' Reply, at 5.]  But the law is clearly established that an

6    individual has the right to be free of police action motivated by retaliatory animus.  *See, e.g.*, *Skoog*,

7    469 F.3d at 1233-35.  In *Skoog*, the Ninth Circuit held the defendant officers were entitled to qualified

8    immunity only because it was not established, prior to that time that an officer could be held liable for

9    retaliation even where probable cause existed.  *Id.* at 1235.  Law enforcement officers, however, have

10   been on notice since *Skoog* was decided in 2006 that even if probable cause exists, they still may not

11   arrest an individual in retaliation for his or her exercise of First Amendment rights.[7]  Thus, Defendants'

12   motion for summary judgment on Howard's retaliation claim is **DENIED**.

13        **C.     Claim 3: *Monell* Claim, Against the County**

14   Howard does not oppose summary judgment on his *Monell* claim against the County.

15   Accordingly, the Court **GRANTS** summary judgment on that claim.

16   **II.    State Law Claims**

17        **A.     Claim 4: Negligence, Against Sgt. Palmer and the County**

18   Howard's negligence claim stems from his allegation that his arrest was unlawful.  Defendants

19   argue, first, because there was probable cause to arrest Howard, the arrest was lawful, privileged, and

20   thus not negligent as a matter of law.  As discussed above, however, genuine issues of material fact

21

22

23   _____

     [7] Sgt. Palmer also argues she is entitled to qualified immunity because she issued the citation to
     Howard pursuant to instructions she received from her supervisor.  As discussed above, however, that
     account is not entirely consistent with the arrest report authored by Deputy Profeta, which states that

24   Sgt. Palmer ordered him to arrest Howard.  Moreover, even if Lt. Barnett did order Howard's arrest,
     Sgt. Palmer's description of her interaction with Howard contributed to Lt. Barnett's decision to issue

25   that order.  [*See* Barnett Dep. at 18:2-7.]  Sgt. Palmer cannot escape liability where her "integral
     participation" contributed to a constitutional violation.  *See Torres*, 548 F.3d at 1206 (affirming

26   summary judgment on a false arrest claim in favor of a particular officer where there was no evidence
     she "instructed the other detectives to arrest [the plaintiff] or that any of those detectives consulted

27   with her before making the arrest"); *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir.
     2007) (explaining that "integral participation" requires "some fundamental involvement in the conduct

28   that allegedly caused the violation" (citing *Boyd v. Benton Cnty.*, 374 F.3d 773, 780 (9th Cir. 2004))).

preclude summary judgment on the issue of whether Howard's arrest was lawful.  Accordingly, summary judgment is also inappropriate on the substance of Howard's negligence claim.

Second, Defendants argue the County is not a proper defendant because no statute expressly provides for direct municipal liability for negligence.  It is well established under California law, however, that a public entity is subject to *respondeat superior* liability for injuries caused by its employees, and is only immune from liability when the individual employee is also immune.  Cal. Gov. Code § 815.2; *see also Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002) (en banc) (California law only grants municipal immunity where the individual employee would also be immune); *Scott v. Cnty. of Los Angeles*, 27 Cal. App. 4th 125, 139-40 (1994) ("Under Government Code section 815.2, subdivision (a), the County is liable for acts and omissions of its employees under the doctrine of respondeat superior to the same extent as a private employer.  Under subdivision (b), *the County is immune from liability if, and only if, [the employee] is immune.*").  Because Sgt. Palmer is not immune from Howard's negligence claim, neither is the County.

Thus, Defendants' motion for summary judgment on Howard's negligence claim is **DENIED**.

**B.      Claim 5: False Arrest, Against Sgt. Palmer and the County**

Although Defendants' motion does not expressly challenge Howard's state law claim for false arrest, they clarified during oral argument that they seek summary judgment on all of Howard's claims, as to all Defendants.  Defendants have not articulated the specific grounds on which they challenge Howard's state law false arrest claim.  However, to the extent Defendants argue Howard's arrest was lawful, the facts disputed above preclude summary judgment.  *See Edgerly*, 599 F.3d at 959.  To the extent Defendants argue the County is not a proper defendant, the County is subject to *respondeat superior* liability for its employees' torts.  *See Robinson*, 278 F.3d at 1016.  Accordingly, the motion for summary judgment on Howard's false arrest claim is **DENIED** as to both Defendants.

**C.      Claim 6: Cal. Civ. Code § 52.1, Against Sgt. Palmer and the County**

Defendants argue Howard's claim under § 52.1 fails because there is no evidence Defendants subjected him to any threat, intimidation, or coercion that interfered with any right.  Defendants also argue the County cannot be held liable under § 52.1 because it is not a "person" within the meaning of that section.

Section 52.1 provides a right of action to "[a]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of [California] has been interfered with" by another person's "threats, intimidation, or coercion." Cal. Civ. Code § 52.1(a)-(b).  An unlawful arrest may support a claim under this section so long as it was accompanied by the requisite threats, intimidation, or coercion.  *Venegas v. Cnty. of Los Angeles*, 32 Cal. 4th 820, 843 (2004); *Gillian v City of San Marino*, 147 Cal. App. 4th 1033, 1051 (2007) (affirming a jury's verdict under § 52.1 based solely on evidence plaintiff was arrested without probable cause).[8]

A jury could reasonably find that Defendants interfered with Howard's exercise of his First Amendment right to challenge Sgt. Palmer's performance of her duties, as well as Howard's Fourth Amendment right against unlawful seizure of his person.  Howard has also presented evidence that Sgt. Palmer threatened to ban him from the South Bay courthouse and all other courthouses in San Diego, effectively threatening his ability to continue working as a process server.  *See Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 65-66 (9th Cir. 1994) (noting a private citizen's constitutional right to engage in the occupation of his choice).

Finally, the County is a proper defendant for this claim.  The County faces *respondeat superior* liability under § 52.1 for illegal conduct committed by its employees during the scope of their employment.  Cal. Gov. Code § 815.2(a); *M.P. v. City of Sacramento*, 177 Cal. App. 4th 121, 128-29 (2009); *see also Santos v. City of Culver City,* 228 Fed. Appx. 655 (9th Cir. 2007) (reversing grant of summary judgment and remanding to district court for consideration of claim that the city was liable for violation of § 52.1 under the theory of *respondeat superior*).

Accordingly, summary judgment on Howard's claim under § 52.1 is **DENIED**.

///

///

---

[8] Defendants argue a plaintiff asserting a claim under § 52.1 must demonstrate the existence of violence of threat of violence in the course of the violation.  Neither the statute nor case law, however, requires a showing of violence as an element of a cause of action under that section except where the complained-of contact is purely verbal.  Cal. Civ. Code § 52.1(j) ("Speech alone is not sufficient to support an action . . . except upon a showing that the speech itself threatens violence . . . .").

## CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for summary judgment.

The Court **DENIES** summary judgment on Howard's first and second causes of action, § 1983 claims for unlawful seizure and retaliatory arrest against Defendants Palmer and Barnett.  The Court also **DENIES** summary judgment that Sgt. Palmer and Lt. Barnett are entitled to qualified immunity.

The Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's third cause of action, a § 1983 claim against the County of San Diego.

The Court **DENIES** summary judgment as to any Defendant on Howard's state law claims of negligence, false arrest, and violations of California Civil Code § 52.1.


**IT IS SO ORDERED.**


**DATED:** 9/9/11

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**